IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROPAK CORPORATION, a Delaware corporation, JOHN W. VON HOLDT, JR., an individual, JANICE ANDERSON, an individual, and PLAS-TOOL CO., an Illinois corporation, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 04-C-5422 |
| v. | ) | |
| PLASTICAN, INC., a Massachusetts corporation, | ) ) ) | HONORABLE DAVID H. COAR |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before this court is the motion by Defendant Plastican, Inc. ("Plastican") to dismiss Ropak Corporation ("Ropak") and Plas-Tool Co. ("Plas-Tool") as plaintiffs for lack of standing. Defendant does not challenge the standing of Plaintiffs John W. von Holdt, Jr. and Janice Anderson. **For the reasons set forth below, Defendant's motion to dismiss Ropak as plaintiff is DENIED. Defendant's motion to dismiss Plas-Tool as plaintiff is GRANTED.**

### I. FACTUAL BACKGROUND

For the purposes of this motion, the following facts alleged in Plaintiffs' complaint are taken as true. John W. von Holdt, Jr. and Janice Anderson own United States Letters Patent No. 4,735,337 (the "'337 patent"), a valid and enforceable patent. (Am. Compl. ¶9, 11). Plas-Tool is

a licensee of the '337 patent by virtue of a license that includes the right to join as plaintiff in any action for infringement of the '337 patent by others. (Am. Compl. ¶10).

Plas-Tool and the original patent owner, John W. von Holdt, Sr., successfully enforced the '337 patent against Ropak Corporation in 1995. The dispute yielded a Settlement and License Agreement entered into on June 15, 1995 ("the 1995 Agreement"). (Am. Compl. ¶11). By virtue of that Agreement, Ropak is now a sublicensee of claims 9-12 of the '337 patent. The Agreement affords Ropak the right to join as plaintiff in any action for infringement of the '337 patent by others. (Am. Compl. ¶10).

At all times since issuance of the '337 patent, **Plas-Tool, under its license,** has been engaged in the business of marketing, selling, and distributing molds used to make the plastic lids protected by the '337 patent. Since entering into its sublicense, Ropak has been engaged in the business of making, selling and distributing molded plastic lids covered by the '337 patent. (Am. Compl. ¶12).

Plaintiffs Ropak, von Holdt, Jr., Anderson, and Plas-Tool have filed suit against Defendant for making, advertising, selling and/or offering for sale molded plastic lids that infringe the '337 patent. (Am. Compl. ¶¶14-20).

## II.     STANDARD OF REVIEW

In ruling on motion to dismiss for lack of standing, the court must accept as true all material allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. Reid L. v. Illinois State Board of Education, 358 F.3d 511, 515 (7th Cir. 2004). Whether a licensee of a patent has co-plaintiff standing depends upon the rights the licensee holds:

> To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone. The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States.

Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1031-32 (Fed Cir. 1995) (internal citation omitted). **The standard, stated alternatively, requires a party to "have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. Rite-Hite Corp. v. Kelley Co., Inc. 56 F.3d 1538, 1552 (Fed. Cir. 1995). A licensee with such proprietary rights is generally called an "exclusive" licensee. Ortho Pharmaceutical, 52 F.3d** at 1032. Thus, exclusive licensees have standing to sue, whereas bare licensees–those who hold nothing more than the patent owner's covenant not to sue the licensee for infringement–do not. Id. "But it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license. Id.

## III. ANALYSIS

Defendant argues that neither Ropak nor Plas-Tool is an exclusive licensee of the '337 patent; therefore, they have no standing to sue. Plaintiffs argue that Ropak and Plas-Tool have exclusive rights under the '337 patent that no other licensee has been granted, and it is these exclusive rights that Defendant has infringed.

A.	ROPAK'S STANDING

To determine whether Ropak has standing as a co-plaintiff, the Court looks to Ropak's agreement with the patentee. See Ortho Pharmaceutical, 52 F.3d at 1032 (stating that "co-plaintiff standing is determined by whether or not the licensee acquired proprietary rights in the patent under the contract with the patentee"). The 1995 Agreement between Von Holdt, Sr., Plas-Tool, and Ropak grants Ropak the right to make, use, and sell plastic lids covered by claims 9-12 of the '337 patent.[1] The Agreement states that this license "shall be *exclusive* with respect to plastic lids . . . within the following size and thickness parameters," which the Agreement then lists. (Von Holdt Decl. Ex. G § 3B) (emphasis added). The Agreement also states that, "[w]ith respect to the plastic lids for round containers which do not fall within the [specified] size and thickness parameters, ROPAK shall have a non-exclusive license." (Von Holdt Decl. Ex. G § 3C). Thus, the Agreement's terms grant Ropak an exclusive license to lids of a certain size under claims 9-12 of the '337 patent. Still, the presence of the word "exclusive" in the license, without more, does not mean that Ropak is an exclusive licensee. Ortho Pharmaceutical, 52 F.3d at 1032.

Nor is the right to sue clause in the Agreement dispositive. The Agreement states that, with respect to infringement claims, the "parties agree to cooperate and assist each other . . . at no cost to the other party, regardless of the party which prosecutes the proceedings." (Von Holdt Decl. Ex. G § 11B). The Agreement provides an example: "[I]n the event of prosecution by ROPAK and if necessary in order for such prosecution to occur, VON HOLDT and PLAS-

---

[1] Claims 1-8 of the patent do not apply to Ropak, therefore there is no license granted with respect to them. (Von Holdt Decl., Ex. G § 3A ).

TOOL *will agree to be joined in the prosecution as nominal parties* and/or to assign ROPAK their rights to prosecute the matter." Id. (emphasis added). This provision, however, does not automatically grant Ropak co-plaintiff standing. As explained in Ortho Pharmaceutical, 52 F.3d at 1034, "a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary interest in the patent."

Rather, the Court must determine whether Ropak holds some of the proprietary sticks in the bundle. Ropak does hold the right to exclude others who might "make, use, or sell" '337 plastic lids within the size and thickness parameters specified in the Agreement. Not only does the Agreement repeatedly refer to Ropak's license as exclusive in this area, Von Holdt, Sr. and Plas-Tool warrant in the Agreement "that it will not sell molds to others which would grant implied licenses in conflict with the exclusive license granted to ROPAK, except to LANDIS [PLASTICS, INC.] under the terms [stated earlier in the Agreement]." (Von Holdt Decl. Ex. G § 3F). Thus, Ropak has received the patentee's express promise that others will be excluded from practicing '337 patent within Ropak's territory.[2]

Defendants argue that because the Agreement makes the above exception for Landis Plastics, Inc. ("Landis"), Ropak does not have the sole right to make, use, or sell plastic lids and therefore cannot be an exclusive licensee. Plaintiffs counter that Landis' right to make, use, or sell lids under the '337 patent is limited to lids that incorporate both the '337 technology and

---

[2] Defendant raises Ortho Pharmaceutical, where the court concluded that the plaintiff's license was nonexclusive because the grantor still had the right to license other parties to do the same acts as the licensee. Ortho Pharmaceutical, 52. F.2d 1033. The Complaint here alleges precisely the opposite facts: In the 1995 Agreement, Von Holdt and Plas-Tool expressly warranted that they would not grant implied licenses that might conflict with the exclusive license granted to Ropak.

technology solely owned by Landis (the '135 patent), or, plastic lids with hinges. By contrast, the '337 patent is for *non*-hinged plastic lids. Thus, according to Plaintiff, Ropak still has the exclusive right to make, use, or sell non-hinged lids ('337 technology only). Defendant infringed upon the '337 technology, not the '135-'337 lid with hinges made by Landis. Therefore, Defendant infringed upon rights that Ropak has exclusively.

Construing all reasonable inferences in Plaintiff's favor, Plaintiff's explanation of Ropak's exclusive rights to '337 patent is persuasive. Moreover, Defendant is incorrect that co-plaintiff standing requires that Plaintiff be able to exclude *all* others from making, using, or selling the patented technology. The case law requires that Plaintiff only be able to exclude "others," not *all* others. See Ortho Pharmaceutical, 52 F.3d at 1032; Hill Phoenix, Inc. v. Systematic Refrigeration, Inc., 117 F. Supp. 2d 508, 512 (E.D. Va. 2000) (stating that "[t]he Federal Circuit has never stated that the licensee must have the right to exclude *all* others") (emphasis in original). Thus, the fact Ropak cannot exclude one party, Landis, from making, using and selling lids covered by both the '135 and '337 patents does not mean that Ropak cannot hold an exclusive license.

The Landis license is a nonexclusive license that predates Von Holdt, Sr. and Plas-Tool's 1995 Agreement with Ropak. (Von Holdt Decl. 7). In Hill Phoenix, the court found that held that the existence of previous, nonexclusive licenses did not preclude a later grant of an exclusive license:

> If a patentee grants a second license that is subject to a prior-existing, nonexclusive license, but otherwise provides the second licensee with the right to exclude all others except the prior licensee, then the subsequent licensee has proprietary rights sufficient to confer standing.

-6-

Hill Phoenix, 117 F. Supp. 2d at 513. The second (exclusive) licensee would still "be a 'beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others.'" Id. at 513 (quoting Ortho Pharmaceutical, 52 F.3d at 1032.). The district court's conclusion finds support in language by the Federal Circuit: In Abbott Laboratories v. Diamedix Corporation, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (emphases added), the Federal Circuit observed that "Abbott's *exclusive license* was . . . *made subject to prior licenses* granted by Diamedix." Taking this and other factors into account, the court ordered the licensee, Abbott, join the patentee, Diamedix, in an infringement suit.

The existence of a nonexclusive license did not preclude the finding that Hill Phoenix was an exclusive licensee with standing to bring a case jointly with the patentee. Nor did the existence of a nonexclusive license preclude Abbott from serving as co-plaintiff in an infringement suit. Accordingly, the license to Landis for technology incorporating both the '337 and '335 patents does not preclude a finding that Ropak is an exclusive licensee under the '337 patent with standing to bring a case jointly with the patentee.

Finally, Defendant argues that, because Ropak lacks full rights under the 1995 Agreement to assign its license, "it must subscribe to the will of another" and therefore does not have complete proprietary rights. (Def.'s Mem. Supp. Mot. to Dismiss 11). The Agreement states that Ropak may sublicense the '337 patent, but may not assign it without the consent of Plas-Tool, unless making an assignment to a successor business. (Von Holdt Decl. Ex. G §§ 6, 8). Defendant cites no case law in support of this final point and the Court does not find any. The Federal Circuit has never defined the right to assign as one of the sticks of the proprietary bundle that a licensee *must* have to be considered an exclusive licensee.

In sum, the Court finds that Ropak has the exclusive right to make, use, or sell lids under the '337 patent. Landis' prior-issued nonexclusive license to make lids that incorporate both its own '135 patent and the '337 patent does not negate this exclusivity, and Ropak has received an express promise from the patentee and Plas-Tool that others will be excluded from Ropak's territory. Because Ropak holds an exclusive (sub)license under the '337 patent, it has co-plaintiff standing. Defendant's motion to dismiss Ropak as plaintiff is denied.

### B. PLAS-TOOL'S STANDING

Likewise, to determine whether Plas-Tool has co-plaintiff standing, the Court looks to Plas-Tool's agreement with the patentee. In 1987, John von Holdt, Sr. granted Plas-Tool a "worldwide, *nonexclusive*, royalty free license to make, use and sell the inventions covered" in the patents von Holdt, Sr. owned at the time and in the future. (Von Holdt Decl. Ex. C) (emphasis added). The '337 patent issued after the date of the 1987 grant, but was covered by the grant. Therefore, under the terms of the 1987 license grant, Plas-Tool has a nonexclusive right to make, use, and sell the invention covered in the '337 patent; that is, a plastic lid.[3] In 1992, Von Holdt, Sr., acting on behalf of a trust, granted Plas-Tool a "*non-exclusive*, royalty-free license to make, use or sell under the Licensed Patents throughout this world." (Von Holdt Decl. Ex. I § 2) (emphasis added). The patents covered under the 1992 agreement included the '337 patent. Von Holdt., Jr. signed this 1992 patent license agreement in 1998 as successor trustee. In 2000, von Holdt, Jr. and Anderson purchased patent properties, including the '337 patent,

---

[3] The 1995 Settlement and License Agreement between Von Holdt, Plas-Tool, and Ropak also refers to Plas-Tool's "nonexclusive license under the '337 patent" in two places. (Von Holdt Decl., Ex. G Page 1, 10). That Agreement does not grant Plas-Tool any new rights under the '337 patent.

from the Family Trust. (Von Holdt Decl. 9). The Memorandum of Understanding accompanying the purchase mentions Plas-Tool's "status as a *non-exclusive* licensee" of the patents affected by the purchase. (Von Holdt Decl. Ex. K § II) (emphasis added). Similarly, the 1995 Agreement between Von Holdt, Sr., Plas-Tool, and Ropak describes Plas-Tool as a "*non-exclusive* licensee under the '337 patent" and contains a provision in which Plas-Tool "warrants that it has a *non-exclusive* license under the '337 patent." (Von Holdt Decl. Ex. G Pages 1, 10) (emphases added).

That the word "exclusive" may or may not appear in the 1987 license or any of the agreements that followed, without more, does not mean that Plas-Tool is an non-exclusive licensee of the '337 patent. See Ortho Pharmaceutical, 52 F.3d at 1032. Nor are the right to sue clauses in the various agreements dispositive. The agreement signed by Von Holdt, Sr. as trustee in 1992 and by Von Holdt, Jr. as successor trustee in 1998 states that actions for infringement "will be initiated upon agreement of Licensor [the Von Holdts] and Licensee [Plas-Tool]." (Von Holdt Decl. Ex. I § 7). The 1995 Agreement between Von Holdt, Sr., Plas-Tool, and Ropak states that "VON HOLDT and PLAS-TOOL, collectively, shall have the initial right to bring and prosecute infringement proceedings involving the '337 patent." (Von Holdt Decl. Ex. G § 11B). These provisions do not automatically accord Plas-Tool co-plaintiff standing. See id. at 1034.

Rather the Court must determine whether Plas-Tool holds some of the proprietary sticks in the bundle of patent rights. Id. There are two issues: (1) whether Plas-Tool has the right to exclude others from making, using, or selling the '337 plastic lids and (2) whether Plas-Tool's alleged exclusive right to make and sell the *molds* often *used to make* the '337 plastic lids translates into the right to exclude others from making, using, or selling the '337 plastic lids. If

the facts alleged in the Complaint and the attached documents--and all reasonable inferences drawn from those facts--can show either one, Plas-Tool has co-plaintiff standing.

Plaintiffs do not allege that Plas-Tool has an exclusive right to make, use, or sell the '337 plastic lids or the right to exclude others who might make, use, and sell those lids. Yet that is the very exclusive right Plaintiff would need to demonstrate to have co-plaintiff. The standard is clear: To have standing to join the patentee in an infringement suit, a licensee must be able to show proprietary rights "in *the* invention" or "on *the* patent" being infringed upon. See Ortho Pharmaceutical, 52 F.3d at 1031, 1032. This Court will not find what does not appear from the facts that Plaintiffs have alleged and what Plaintiffs do not argue. Plas-Tool does not have proprietary rights under the '337 patent to exclude others from making, using, and selling the plastic *lids* covered by the patent.

Rather, Plaintiffs argue that Plas-Tool is an exclusive licensee of the '337 patent because Plas-Tool "is and always has been the exclusive licensee for *making the molds* for the '337 patented products." (Pl.'s Mem. Opp. Def's Mot. to Dismiss 11) (emphasis original). Plas-Tool, Plaintiffs assert, "was the exclusive licensee to *make the molds* that Plastican used to make its infringing products." (Pl.'s Mem. Opp. Def's Mot. to Dismiss 2) (emphasis original). Plaintiffs explain:

> In practice, Plas-Tool is the sole-arbiter of '337 patent technology . . . . No license to practice '337 technology can be acquired without requesting from Plas-Tool the mold(s) to produce under that technology. Control of the distribution of Plaintiff's Plas-Tool's molds is the modus for controlling the authority to practice '337 patent technology.

(Pl.'s Mem. Opp. Def's Mot. to Dismiss 11). Plas-Tool argues that it has the exclusive right to make and sell *molds*; therefore, almost no one can make '337 lids without purchasing a mold

from Plas-Tool.  See Von Holdt Decl. 2 (declaring that all '337 lids "are *typically* fabricated using such molds") (emphasis added).  Given this, Plaintiffs argue, Defendant has infringed upon Plas-Tool's exclusive rights under the '337 patent by failing to buy a mold from Plas-Tool before making and selling a plastic lid that infringed upon the '337 patent.

Plas-Tool, however, does not point to any license agreement describing Plas-Tool's exclusive right to make and sell *molds* under the '337 patent or any other patent.  It merely describes itself as the "only entity licensed to make the molds that typically are used to fabricate the '337 patent products" and the "sole authorized manufacturer and provider of injection-molding molds commonly used to produce products under the '337 products." (Pl.'s Mem. Opp. Def's Mot. to Dismiss 2; Von Holdt. Decl. 2).  The Court agrees with Defendant that Plas-Tool's status as an authorized, popular *mold-maker* does not convert its non-exclusive license to make, use, and sell lids into an exclusive license to make, use, and sell *lids*.  (Def.'s Reply Mem. Supp. Mot. Dismiss 8).

According to Plaintiffs, the right of first refusal provision in the 1995 Agreement between Von Holdt, Sr., Plas-Tool, and Ropak is evidence of Plas-Tool's exclusive rights under the'337 patent.  (Pl.'s Mem. Opp. Def's Mot. to Dismiss 12).  The 1995 Agreement provides that Ropak can purchase a mold from a third party only if Plas-Tool elects not supply one.  First, however, however, Ropak must submit the third party's quote to Plas-Tool to give Plas-Tool the opportunity to make the mold at the third party's rate.  In addition, Ropak must include this right of first refusal provision in any sublicense agreement.  Plaintiff argues that, even though Ropak has this right to purchase molds from other companies, Ropak has never exercised the right.

Hence, Plas-Tool, "continues to be the 'exclusive' licensed mold-maker" for the lids that Defendant infringed. (Pl.'s Mem. Opp. Def's Mot. to Dismiss 4).

The right of refusal provision does nothing but highlight that Plas-Tool is, first and foremost, a maker of molds. The present action, however, is one for infringement of the '337 patent for plastic *lids*, not for the molds that make the plastic lids. Plas-Tool has not alleged a cause of action for infringement of an exclusive license to make molds for the '337 plastic lids. Plas-Tool has not even identified a patent for its molds. Thus, even a showing (which the Court determines that Plas-Tool cannot make) that Plas-Tool is the exclusive maker of *molds* does not amount to a showing that Plas-Tool has the right to exclude others from making, using, or selling lids.

Finally, Plaintiffs argues that the patent owners "have always had an 'ownership' interest" in Plas-Tool and "never contemplated" licensing the mold-making operation to anyone else. (Pl's Mem. Opp. Def's Mot. to Dismiss 12). "Plas-Tool is the sole licensee of the '337 patent technology, through which all subsequent licenses flow." (Id.) Plaintiffs cite Kalman v. Belyn Corp., 914 F.2d 1473, 1482 (Fed. Cir. 1990), for the proposition that "when the nexus between the sole licensee and the patentee is so clearly defined as here, the sole licensee must be recognized as the real party in interest."

The Kalman case is distinguishable because (a) it is restricted to a two-supplier market and (b) Plas-Tool is not a sole licensee with the meaning of Kalman and the cases cited therein. First, Kalman allows a sole licensee to join as co-plaintiff when the sole licensee is "damaged by an infringer in a two supplier market." Kalman 914 F.2d at 1482. Defendants are correct that Plaintiffs are not operating in a two-supplier market when: Since 1995, Ropak and Plas-Tool

have cooperated in stopping *multiple* infringers of the '337 patent. (Von Holdt Decl.¶ 29). Second, Kalman granted co-plaintiff standing because the licensee was the sole licensee to *sell* the patented product. See also Weinar v. Rollform, Inc., 722 F.2d 797, 806 (Fed. Cir. 1984) (permitting licensee with an exclusive right to *sell* patented product co-plaintiff standing); Duplan Corp. v. Deering Milliken Research Corp., 522 F.2d 809, 812 (4th Cir. 1975) (permitting exclusive-*use* licensee under the patent to join as co-plaintiff). Plas-Tool does not hold the sole or exclusive license to *make* '337 lids, *use* '337 lids, or *sell* '337 lids. At most, Plas-Tool has the exclusive honor of being the sole mold-maker the patent owners use.

In sum, Plas-Tool has alleged no facts that show it has the right to exclude others from making, selling, or using '337 plastic lids. At most, Plas-Tool has demonstrated its dominance of the market for molds that can be used to make '337 plastic lids. Plas-Tool has received the patentee's express or implied promise that others will be excluded from making molds that are used to make '337 lids, but not the "**express or implied promise that others shall be excluded from practicing *the invention***" in dispute, which is the '337 patent for plastic lids. See Rite-Hite, **56 F.3d at 1552.** Because Plas-Tool has not shown the "beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing," it is not an exclusive licensee of the '337 patent. Ortho Pharmaceutical, 52 F.3d at 1032. Defendant's motion to dismiss Plas-Tool as plaintiff is granted.

## IV. CONCLUSION

For the foregoing reasons, **Defendant's motion to dismiss Ropak as plaintiff is DENIED. Defendant's motion to dismiss Plas-Tool as plaintiff is GRANTED.**

Enter:

/s/ David H. Coar_____

David H. Coar

United States District Judge

Dated: **September 30, 2005**