UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROPAK CORPORATION, JOHN W. VON HOLDT, JR. and JANICE ANDERSON,<br><br>Plaintiffs,<br><br>v.<br><br>PLASTICAN, INC.,<br><br>Defendant. | Civil Action No: 04 C 5422<br><br>Judge David H. Coar<br>Magistrate Judge Valdez |

**DEFENDANT PLASTICAN'S MARKMAN BRIEF
IN SUPPORT OF ITS CLAIM CONSTRUCTIONS**

Pursuant to the Court's Order of June 8, 2006, Defendant Plastican provides the following Brief in support of its proposed claim constructions for asserted Claims 9-12 of the '337 patent in suit.

## Introduction

The '337 patent in suit is directed to an extremely simple alleged invention -- a lid for a container. The several terms in the four asserted claims for construction are straightforward common English words without an alleged special significance or meaning in the field. There is no prosecution "history" *per se*, since the four asserted improvement[1] Claims 9-12 of the '337 patent in suit were allowed as filed without alteration by the Patent Office. As discussed *infra*, the short patent specification has ample unambiguous disclosure to guide the Court to the proper claim constructions without relying upon expert testimony (Exhibit A, '337 patent).[2]

---

[1] The sole independent asserted Claim 9 is an *improvement* claim in "Jepson format" that recites an extremely narrow purported advance over the prior art. *See* 37 C.F.R. §1.75(e); 3-8 *Chisum on Patents* § 8.06[1](c): "A 'Jepson' claim is one that begins with a preamble that recites an old device... , continues with a transition that states 'wherein the improvement comprises' ... and concludes with the body of the claim as the statement of the new elements or improvements upon the old device."

[2] All Exhibits referenced herein are attached to the accompanying Declaration of Diane A.D. Noël, Esq., attached hereto as Exhibit 1.

## Claim Construction Principles

Claim terms are to be given their ordinary and customary meaning to a person of ordinary skill in the art in the context of the particular claim and the entire patent, including the specification, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In a case such as this, the ordinary meaning of the claim language, as understood by a person of ordinary skill in the art, may be readily apparent to a lay judge, and claim construction should involve "little more than the application of the widely accepted meaning of commonly understood words", *Phillips*, 415 F.3d 1314 (*citing Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation")). Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words. *Id.* The specification may reveal a *special definition* given to a claim term by the patentee that differs from the meaning it would otherwise possess; in such cases, the alleged inventor's "lexicography", i.e., special definition, governs, *Id.* at 1316 (*citing CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). When an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence. *Vitronics*, 90 F.3d at 1583. Extrinsic evidence may be used for the Court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims, *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

The object and purpose of the invention stated in the specification will inform, but not limit, the proper meaning of the claims, *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1320 (Fed. Cir. 2005) (interpretation based on "object of the invention"); *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450 (Fed. Cir. 1986) ("'smooth' means smooth enough to serve the inventor's purposes"); *see generally* 5A Chisum on Patents § 18.03[2][c][iv].

## The '337 Patent In Suit Discloses A Simple Alleged Invention

The short '337 patent in suit is uncomplicatedly directed to lids for containers that tightly grip a container prior to initial opening, and less tightly grips the container after removal along a

zig-zag line of a tear-away portion. The objective is to have a strong grip before opening, but still have a good enough grip for reclosure of the lid after initial opening.[3]

Immediately below are views of the claimed lid on a container depicted in Figures 1 and 4 of the '337 patent in suit. In Figure 4, the container wall is **10** and its upper lip is **14**. The rest of the structure shown in Figure 4 is the lid. The part of the lid that grips the container is termed a "gripping flange" **18** that contains a "gripping projection" **20**. The entire gripping flange **18** has a "zig-zag" tear-away pattern, as shown in Figure 1. At initial opening of the lid, the lower portion of flange **18** is torn away along the zigzag tear line, so that part of the flange **18** (and corresponding parts of the projection **20**) is removed, and part remains, after initial opening.



As discussed *infra*, it is undisputed that the claimed projection **20** will have multiple "gaps" around the circumference where it does not grip the container and, thus, is a series of separate projecting segments that are "substantially continuous" around the lid.

### Claim Terms For Construction

Claim 9 is the only asserted independent claim:[4]

---

[3] Ex. A, '337 Patent, col. 3, l. 42 – 54: "Upon removal of tear strip 16 by tearing along zigzag tear line 24 circumferentially about lid 12, segments 26 of gripping flange 18 are removed, along with their corresponding portions of annular gripping projection 20. However, segments 28 of gripping flange 18, which carry sections of gripping projection 20, remain attached to lid 12, to cause a measure of retention capability to remain with lid 12 despite the removal of tear strip 16. Thus, while, after opening of tear strip 16, lid 12 may be more easily removed from its container, it also may be reapplied to reclose the container with a measure of retention capability between the lid and container."

[4] Independent asserted Claim 9 with disputed terms highlighted: 9. In a plastic lid for a container which comprises a lid body and an **annular**, peripheral **gripping flange** for retaining the lid on the container, said gripping flange defining a **substantially continuous, inwardly extending annular gripping projection**, said gripping flange further defining a substantially annular upper portion and a substantially annular lower portion, and circumferential tear line means to permit tearing separation of said lower portion from the upper portion of the gripping flange, **the improvement comprising**, in combination: said tear line means defining a **zigzag path** circumferentially about said gripping flange, whereby tearing

For the Court's convenience, the following Table contrasts the parties' proposed constructions in Claim 9:

| Plastican's Construction[5] | Plaintiffs' Construction[6] |
|---|---|
| "gripping flange" means a gripping flange without any temporal limitation regarding installation. | "gripping flange" means "a gripping flange that does not require any secondary tools for altering the gripping flange's shape in order to fasten the lid to the shipping container" |
| "zigzag path" means any path with turns in alternating or altering directions, including a saw tooth pattern, a square wave pattern, a trapezoidal wave pattern, and any pattern approximating the pattern disclosed in Figures 1 & 2 of the '337 patent in suit, and any of these patterns with slightly rounded corners. | "tear line means defining a zigzag path" means "a tear line with a series of abrupt turns or alterations in course" |
| "annular" means "shaped like a ring." | "annular" gripping projection means "a gripping projection that extends around the inside of a ring-shaped lid" |
| "substantially continuous" gripping projection means "a circumferential gripping projection that can have discontinuities or gaps around its circumference but is significantly uninterrupted to (a) provide a strong grip to the container before initial opening, and (b) provide a less strong grip after initial opening so that the lid is still reclosable. | "a substantially continuous" gripping projection means "a gripping projection that extends around the inside of a ring-shaped lid largely, but not wholly, uninterrupted, allowing for gaps or weakened spots in the gripping projection in the areas where the tear line crosses the gripping projection and the gripping projection otherwise has substantially the same geometry" |
| Not disputed | "inwardly extending" gripping projection means "a gripping projection that projects in from the plane of the gripping flange toward the axis of the lid" |

The parties do not dispute the meaning of terms in asserted Claim 10, and agree that "four" means "at least four" in such claim.[7] Asserted Claims 11 and 12 are identical except that

---

of said lower portion from the upper portion causes removal of spaced portions of said annular gripping projection from the lid without removing all of said gripping projection from the lid, whereby said lid, after removal of the lower portion, is more easily openable, but can still be retained on the container by the remaining portions of said gripping projection.

[5] Defendant Plastican's Modified Proposed Terms, July 21, 2006, Exhibit B.

[6] Plaintiffs' Modified Proposed Terms, July 21, 2006, Exhibit C.

they depend from asserted Claims 9 and 10, respectively.[8] The following Table shows the terms of asserted Claims 11 and 12 for construction:

| Plastican's Construction | Plaintiffs' Construction |
|---|---|
| "retaining flange positioned coaxially and radially inwardly from said gripping flange" means "the retaining flange is positioned on the same or substantially same axis and radius as the gripping flange" | "coaxially and radially" means "in a circle around the center of the lid" |
| Not disputed | "and in spaced relation thereto to define with said gripping flange an annular chamber for receiving a container lip" means "the gripping flange and the annular retaining flange are in close enough proximity to form a chamber for receiving a container lip." |

### 1.   *"Gripping Flange"*

Plaintiffs seek to introduce a limitation into the scope of the claimed lid gripping flange regarding the timing or manner of its installation and, also, appear to attempt to limit "container" to a "shipping container". First, Plaintiffs originally contended the flange was "formed with a gripping projection prior to installation of the lid onto a shipping container," Plaintiffs' Proposed Terms, June 19, 2006, Exhibit D. Then, Plaintiffs changed that construction to a flange "that does not require any secondary tools for altering the gripping flange's shape in order to fasten the lid to the shipping container", Exhibit C, Table, *supra*. Either way, there is no basis in the claims or specification to read-in asserted Claim 9 an installation or formation of any timing limitation, as Plaintiffs urge. Nor is there such a basis to read in "shipping" before container. The only basis appears to be Plaintiffs' desire to avoid prior art. Plaintiffs' Statement of Alleged Disputed Fact in Opposition to Plastican's Motion for Summary Judgment of Invalidity, ¶¶ 24-25 (Dkt. No. 160)(distinguishing prior art references on the basis of these presumed claim limitations).

---

[7] Claim 10: "The plastic lid of claim 9 in which four of said spaced portions are present."

[8] Asserted Claim 11 depends from asserted Claim 10, and is otherwise identical to asserted Claim 12, which depends from asserted Claim 9:  Asserted Claim 12 is as follows: "The plastic lid of Claim 9 in which said lid body carries an annular **retaining flange** positioned coaxially and radially inwardly from said gripping flange and in spaced relation thereto, to define with said gripping flange an annular chamber for receiving a container lip" (emphasis provided).

Plastican contends that "gripping flange" need not be construed to mean anything other than "gripping flange" and urges the Court to adopt Plastican's construction.

### 2. *"ZigZig Path"*

In the '337 patent in suit, Plaintiffs elected to use the common term "zigzag" in an uncommon way that requires the Court to construe "zigzag" more broadly than its ordinary meaning outside the patent in suit. "Zigzag" (or "zig-zag") ordinarily means "a series of sharp alternating turns," as in a sawtooth pattern.[9] Plainly the "zig" and the "zag" refer to the two "alternating" directions of the turns consistent with that plain meaning, Oxford English Dictionary, Exhibit F ("the two different vowels suggesting two different directions."). However, the only pattern disclosed in the '337 patent in suit for the tear line means 24 is at best a *truncated* sawtooth, a.k.a., a trapezoidal waveform[10], as follows:



Furthermore, Plaintiffs' commercial lid, marked with the number of the '337 patent in suit, embodies the pattern of Fig. 2, above, but the corners are slightly rounded, Exhibit H, photos of Plaintiffs' patented lid.[11]

---

[9] See Exhibit E: (Standard Encyclopedic College Dictionary (1968)(a series of short, sharp turns or angles from one side to the other in succession)); The New Oxford American Dictionary (2001)(a line or course having abrupt alternate right and left turns); Webster's New World College Dictionary (2001)(a series of short, sharp angles or turns in alternate directions, as in a line or course); The American Heritage Dictionary (1985)(a line or course that proceeds by sharp turns in alternating directions; something, such as a road or design, that exhibits one or a series of sharp turns); Webster's New Collegiate Dictionary (1997)(one of a series of short sharp turns, angles, or alterations in a course); and Webster's New Universal Unabridged Dictionary (1983)(any of a series of short, sharp turns or angles in alternate directions, as in a line; a number or series of short, sharp turns)).

[10] See, e.g., as general background from the electronics field where various waveforms are provided, a 1992 paper presented to the Institute for Electrical and Electronics Engineers, comparing "zig-zag" (ZZLSM) and "trapezoidal" (TRLSM) linear synchronous motor waveforms. See Exhibit G, page 1450, Figure 3.

[11] Plastican intends to offer said lid for the Court's review at the Markman hearing.

Accordingly, under well-settled law, Plaintiffs alleged inventor is deemed to have used his "own lexicography" as to "zigzag" and the Court must construe "zigzag" consistent with "what [he] actually invented and intended to envelop with the claim", *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PCL v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)("patentees frequently use terms idiosyncratically"). Thus, to the extent one of ordinary skill in the art could derive a definite meaning intended by the alleged inventor, "zigzag" must be interpreted to broadly cover (a) a true "zigzag" sawtooth pattern of alternating turns, (b) the truncated sawtooth pattern of the only disclosed embodiment of the '337 patent in suit, and (c) the patentees' commercially marked rounded edge embodiment, *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1343 (Fed. Cir. 2001) ("construction [that] would not read on the preferred embodiment [is] rarely, if ever... correct") (cited by Plaintiffs in Opp. To Plastican's Mot. For Summary Judgment, at p. 5); *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005)(same, also cited in Opp. Memo. at p. 5).

To reconcile the foregoing, Plastican contends that "zigzag path" means any path with turns in alternating or altering directions, including a saw tooth pattern, a square wave pattern, a trapezoidal wave pattern, and any pattern approximating the pattern disclosed in Figures 1 and 2 of the '337 patent in suit, and any of these patterns with slightly rounded corners. Plastican urges the Court to adopt Plastican's construction of "zigzag path".

### 3. *"Annular"*

Plaintiffs urge a construction of "annular gripping projection" as "a gripping projection that extends around the inside of a ring-shaped lid." Plastican contends "annular" means "shaped like a ring." The parties thus agree that "annular" implies ring-shaped. However, Plastican submits that Plaintiffs' construction renders "inwardly extending" redundant, and incorrectly seeks to modify "lid" instead of the "projection" on the lid. The claim language in context reads: "...said gripping flange defining a substantially continuous, inwardly extending annular gripping projection...." Plaintiffs already urge a construction of "inwardly extending gripping projection" as "a gripping projection that projects in from the plane of the gripping flange toward the axis of the lid." Therefore, Plastican's claim construction for "annular" should be adopted by the Court.

### 4. *"Substantially Continuous"*

Plastican's Motion for Summary Judgment papers are respectfully adopted herein by reference, including particularly its Reply Memorandum in Support of its Motion (Dkt. # 194, pp. 5-9, "Plastican's SJ Reply"), where Plastican responds in detail to Plaintiffs' claim construction arguments as to "substantially continuous", Fed.R.Civ.P Rule 10(c).[12] As shown therein and above in the claim construction Table at page 4, the claimed "substantially continuous gripping projection" will have "gaps" and, thus, actually comprises separate segments or *gripping projections*. Boiled down to its essence, the dispute on this point is whether "substantially" creates a numerical or quantitative upper limit on the number or size of "gaps" between segments, as Plaintiffs contend, or whether "substantially" means the projection is continuous *in substance* – i.e., to operate as the claims functionally require, as Plastican urges.

Additionally, Plaintiffs seek to read in a limitation that requires the separate segments between the gaps to have "substantially the same geometry." This unfounded implied limitation is an attempt to limit the claim to the preferred embodiment to distinguish over an asserted piece of prior art that has slightly varying shaped projections segments, SJ Reply Memo. at 8-9, Ex. I. Thus, Plaintiffs' contentions are unsupported and the Court is urged to adopt Plastican's construction of "substantially continuous".

#### a. *There Is No "Gap-Width" Limitation In "Substantially Continuous"*

Indisputably, the '337 patent in suit expressly states that the gripping projection is subject to "adjustment and modification" depending on the "retention capability" needs for a particular

---

[12] Plastican's SJ Reply Memo. is provided as Exhibit I for the Court's convenience.

[14] '337 patent in suit, col. 3, ll. 43-63 (emphasis supplied): Upon removal of tear strip 16 by tearing along zigzag tear line 24 circumferentially about lid 12, segments 26 of gripping flange 18 are removed, along with their corresponding portions of annular gripping projection 20. However, segments 28 of gripping flange 18, which carry sections of gripping projection 20, remain attached to lid 12, to cause a measure of retention capability to remain with lid 12 despite the removal of tear strip 16. Thus, while, after opening of tear strip 16, lid 12 may be more easily removed from its container, it also may be reapplied to reclose the container with a measure of retention capability between the lid and container. **This amount of retention capability may be adjusted as desired by** adjusting the relative lengths of the segments 26 and 28 of gripping flange 18, or by **adjustment and modification of gripping projection 20.**

lid/container.[14] Indisputably, the '337 patent in suit expressly states that gaps are to be provided in the gripping projection to functionally achieve such variable retention capability.[15]

Plaintiffs do not urge a general limit on the *number* of gaps (or corresponding sections) of the projection.[16] Rather, Plaintiffs appear to urge a construction of "substantially" that would read-in an effective numerical limit as to the width of the gaps – i.e., that the claim only allows for "gaps or weakened spots in the gripping projection in the areas where the tear line crosses the gripping projection", Table, above at 5.[17]

However, that is not what Plaintiffs argued to the Honorable Matthew F. Kennelly in a related case filed in this Court on the same patent two weeks prior to the filing of the instant suit, *Ropak et al. v. IPL, Inc.*, 1:04-cv-05091 (filed Aug. 2, 2004, settled/dismissed April 7, 2005). In that case, Plaintiffs took a much wider view of their patent in their *Markman* Brief (Plaintiffs' Response Markman Brief in *IPL* Case, Exhibit J, pp. 4-5)(emphasis supplied):

> [N]ot only does the preferred embodiment definitely included gaps or weakened spots at the crossing points of tear line 24, as discussed above, but **the '337 patent expressly contemplates that there could be additional gaps (other than at the tear line) in alternative embodiments.**

---

[15] Id. (emphasis added): "**For example, gaps may be provided in the generally annular gripping projection 20 if desired**, although it is **generally preferred** for gripping projection 20 to be substantially intact (except for gaps or weakened spots at the crossing points of tear line 24) to provide a better hermetic seal to the container prior to initial opening."

[16] Dependent asserted claim 10 requires "four spaced portions," which reflects the only illustrated complete embodiment of Figure 1, see page 6, above. Plainly, in such a preferred embodiment, the zigzag tear line crossed the gripping projection at eight places, and thus the preferred number of gaps and segments in the '337 Patent is eight. By the doctrine of claim differentiation, claims 9 and 11 could have more than eight gaps (and more than eight segments), and the specification places no upper limit on the number of gaps or segments. *U.S. v. Telectronics, Inc.*, 857 F.2d 778, 784 (Fed. Cir. 1988) (holding that district court cannot construct limitations of a broader claim so that they are the same as the limitations of a narrower claim).

[17] Plastican's co-pending Motion for Summary Judgment is for invalidity over a primary Japanese prior art reference, Ishikawa. Plaintiffs dispute that Ishikawa discloses a "substantially continuous" gripping projection. Plaintiffs cannot, and do not, dispute that the gaps between the "gripping projections" of Ishikawa, which are entirely circumferential, are *centered at* the points where the tear-line crosses the "gripping projections." See Plaintiffs' Dealy Decl. ¶ 20, 21 & 43 (Dkt. No. 161-1)(Ishikawa shows "gripping projections"); page 4 of Plastican SJ Reply, Ex. I (indisputably showing gaps where tear line crosses between gripping projections). Yet, Plaintiffs maintain that "the Ishikawa reference's [gripping projections] do not extend substantially all the way around the cap." Dealy Decl., ¶ 20, cited at page 8 of Plaintiff's Memo in Opposition to Motion for Summary Judgment (Dkt. No. 159).

As argued in Plastican's SJ Reply Memo., Ex. I., Plaintiffs' argument in the IPL case was correct – the '337 patent in suit expressly contemplate gaps other than strictly at the tear line.

In the *IPL* case, Plaintiffs stated its *Markman* construction as follows (Plaintiffs' Reply Memo. in the *IPL* case, Exhibit J, p. 14)(emphasis supplied):

> As required by the rules of patent construction, the meaning of this phrase [substantially continuous] comports with the common dictionary meaning of "substantially" and "continuous." See Merriam-Webster Online Dictionary (2005)(continuous: "marked by uninterrupted extension in space, time or sequence"; and substantially: "being largely but not wholly that which is specified"); Houghton-Miflin, American Dictionary of English Language (4th Ed. 2000)(continuous: "1. Uninterrupted in time, sequence, substance or extend; 2....**Attached together in repeated units**; and, substantially; "1. **Of, relating to, or having substance; material**....5. Considerable in importance, value, degree, amount of extent.

The foregoing is generally consistent with dictionaries now proffered by Plastican.[18, 19]

Thus, Plastican also urges the Court to adopt a construction that requires the repeating units or segments of the projection to be continuous around the lid *in substance, materially*, or *significantly*. What is material or significant in the context of the '337 patent in suit is determined based on the functional claim language and specification that indisputably provides for a projection with gaps at or beyond the tear line that is subject to "adjustment and modification" suitable for desired "retention capabilities." "Substantially continuous" thus means "uninterrupted in substance" or "significantly uninterrupted" to provide a strong grip pre-

---

[18] See Exhibit K as to "continuous:" Webster's New Collegiate Dictionary (1977)(marked by uninterrupted extension in space, time, or sequence); The American Heritage Dictionary (1985)(extending or prolonged without interruption or cessation; unceasing.); The New Oxford American Dictionary (2001)(forming an unbroken whole; without interruption); Standard Encyclopedic College Dictionary (1968)(connected, extended or prolonged without break; uninterrupted); Webster's New World College Dictionary (2001)(going on or extending without interruption or break; unbroken; connected); Webster's New Universal Unabridged Dictionary (1983)(joined without intervening space; without cessation or interruption; unbroken; constant; connected).

[19] See Exhibit L as to "substantially:" The American Heritage Dictionary (1985)(of, pertaining to, or having substance; material; considerable in importance, value, degree, amount, or extent); The New Oxford American Dictionary (2001)(to a great or significant extent; for the most part; essentially); Webster's New World College Dictionary (2001)(of or having substance; with regard to essential elements); Webster New Collegiate Dictionary (1997)(consisting of or relating to substance; important, essential; being largely but not wholly that which is specified); Webster's New Universal Unabridged Dictionary (1983)(to a substantial degree, specifically; largely; essentially; in the main.)

tear, and a less strong grip post-tear suitable for reclosure after initial opening, *Medrad, Inc.*, 401 F.3d at 1320 (interpreting "substantially uniform"); Plastican's SJ Reply Memo, pp 5-9.

*Medrad* is directly on point. In that case, the District Court invalidated the patent for anticipation on summary judgment after interpreting a "*substantially uniform* first magnetic field" in an MRI machine to mean a field of "a sufficient uniformity to give a good image," *Id.* at 1316. In affirming the decision, the Federal Circuit stated, "it is entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language," *Id.*

Here, as in *Medrad*, a functional construction is appropriate since it is supported by the intrinsic record.[20] The claims of the '337 patent in suit contain unambiguous functional limitations supported by the specification, and there is no basis in the file history to conclude that "substantially continuous" was used strictly quantitatively, *Cf. Ecolab*, 264 F.3d 1358, 1367 (noting that use of term "substantially" in some cases is to avoid a strict numerical boundary to distinguish over prior art, citing *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821-22 (Fed. Cir. 1988)).

In this case, each asserted claim requires that the lid, after tearing away part of the gripping projection, "is *more easily openable*, but can still be retained on the container."[21] Asserted Claim 9 thus functionally requires (by use of the comparative term "more") a difference between the openability (i.e., the "retention capability") of the lid before and after removal of the

---

[20] This case is unlike *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001), which was distinguished in *Medrad*. According to the *Medrad* panel, in *Ecolab*, "the claim at issue was purely structural and contained no functional limitations," 401 F.3d 1313, 1318. Thus, in *Ecolab*, the trial Court erred by giving a functional definition to "substantially uniform," *Id.* Yet, in *Medrad* the Court construed the same term functionally by consulting that particular claim's preamble and body that contained functional limitations, and the specification's stated functional objective, *Id.* at 1319-20. *See cf. MPT, Inc. v. Marathon Labels, Inc.*, 2006 U.S. Dist. LEXIS 38980, *3 (N.D. Ohio June 13, 2006)(refusing functional construction of "substantially permanent" and not following *Medrad*; holding that *Medrad* "stands for the proposition that functional definitions are appropriate when supported by the patent, prosecution history and other relevant evidence." In *MPT*, "the prosecution history in particular demonstrate[d] significant efforts to provide a quantitative definition of "permanent.").

[21] Claim 9: "...said tear line means defining a zigzag path circumferentially about said gripping flange, whereby tearing of said lower portion from the upper portion causes removal of spaced portions of said annular gripping projection from the lid without removing all of said gripping projection from the lid, **whereby said lid, after removal of the lower portion, is more easily openable, but can still be retained on the container by the remaining portions of said gripping projection.**" (emphasis supplied).

tear-strip and the corresponding part of the "substantially continuous gripping projection." And, as shown above, the specification expressly advises that the gripping projection is to be altered and modified as needed to achieve that dual retention capability function, including specifically by providing gaps.[22]

Thus, there is no basis in the claim or the specification to read in a strict tolerance or numerical limitation on the width of the gaps in the gripping projection, and Plastican's asserted functional construction is the one "that stays true to the claim language and most naturally aligns with the patent's description of the invention," *Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005)(*quoting Renishaw PLC*, 158 F.3d at 1250). Thus, the Court is urged to adopt Plastican's construction and not impose any "Gap-Width" limitation in "Substantially Continuous".

### b. There Is No "Geometry" Limitation In "Substantially Continuous"

Again, Plastican respectfully adopts the arguments in its SJ Reply Memo as to this proposed implied limitation having no basis in the claims or specification, Ex. I, pp. 8-9, and urges the Court not to create such a limitation. Plaintiffs urge the Court to read in the "geometry" of its preferred embodiment drawings to avoid asserted prior art, *Id.* As aptly stated by Plaintiffs in the *IPL* case, when on the *other side* of this issue (Ex. J, Pls. Reply Memo. in *IPL* case, p. 1 n.1):

> [T]he Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). In addition, the Federal Circuit has stated that "[w]hile it is true that a court may limit the meaning of a claim term if the patentee clearly set forth a definition of the claim term in the written description... [t]he description of the preferred embodiment is one particular example of the claimed invention that is consistent with the ordinary meaning of the claim terms as we currently understand them." *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1377 (Fed. Cir. 2003). In contravention of those Federal Circuit decisions, Defendant [IPL] appears to argue that Plaintiff's claims should be limited to the embodiments disclosed in the drawings.

Accordingly, the Court is urged to adopt Plastican's construction and not impose any "geometry" limitation in "Substantially Continuous".

---

[22] The specification discloses that in the preferred embodiment, the gripping projection is configured so that, functionally, the lid is "essentially non-removable, except by removal of the tear strip." Ex. A, '337 Patent, col. 3, ll. 38-41.

### 5. *"Coaxially and Radially"*

Asserted dependent asserted Claims 11 and 12 are directed to a retaining flange structure found in Plaintiffs' own prior art patent issued seven years prior to the filing of the '337 patent in suit, (Exhibit M, US Patent No. 4,210,258; Exhibit I, Plastican's SJ Reply Memo, pp. 9-10). Figure 4 of the '337 patent in suit shows the retaining flange 32 that together with the gripping flange 18 form an annular chamber that receives the lip of the container 14 (written description at '337 patent in suit, col. 3, ll. 33-37).



Claims 11 and 12 require that the retaining flange 32 be "positioned coaxially and radially inwardly from said gripping flange [18]." Plaintiffs contend that "coaxially and radially" means "in a circle around the center of the lid." Plastican contends that the terms should be construed based on their ordinary meaning, which is consistent with the illustrated embodiment; namely, that "coaxially" contemplates the same axis, and "radially" contemplates on the same radius. Thus, "the retaining flange is positioned on the same or substantially same axis and radius as the gripping flange." For the foregoing reasons, Plastican urges the Court to adopt Plastican's construction of the "coaxially and radially" claim language.

### Conclusion

For the foregoing reasons, Plastican urges the Court to adopt Plastican's construction of the following terms in asserted Claim 9:

    (a) "Gripping Flange";

    (b) "Zigzag Path"; and

    (c) "Substantially Continuous"

and the following terms in asserted Claims 11 and 12:

    (d) "Coaxially and Radially".

Respectfully submitted,

*[signature: Granger Cook]*

Granger Cook, Jr.
Betsy J. Levstik
COOK ALEX
200 West Adams Street, Ste. 2850
Chicago, Illinois 60606
Telephone: (312) 236-8500
Facsimile: (312) 236-8176

July 28, 2006

OF COUNSEL:

Nicholas A. Pandiscio
PANDISCIO & PANDISCIO
470 Totten Pond Road
Waltham, MA 02451
Telephone: (781) 290-0060
Facsimile: (781) 290-4840

Howard J. Susser (pro hac vice)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Telephone: (781) 345-3000
Facsimile: (781) 345-3299

## Certificate Of Service

It is hereby certified that on this 28th day of July, 2006, a true and correct copy of DEFENDANT PLASTICAN'S MARKMAN BRIEF IN SUPPORT OF ITS CLAIM CONSTRUCTIONS is being served via first class mail, postage pre-paid to:

> Stephen S. Korniczky
> PAUL, HASTINGS, JANOFSKY & WALKER
> 3579 Valley Centre Drive
> San Diego, CA 92130

and via hand delivery to:

> Daniel J. Hurtado, Esq.
> Jenner & Block
> One IBM Plaza
> Chicago, IL 60611

*[signature: Betsy Twietth]*